Submitted on record and briefs August 31, affirmed October 31, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIM EDWIN ESSEX,
*Defendant-Appellant.*

Hood River County Circuit Court
040098GM, 040099GM, 040129VM;
A128841 (Control), A128842, A128843

170 P3d 1094

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Ryan T. O'Connor, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Katherine H. Waldo, Senior Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Ortega, Judge, and Deits, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his conviction, after a jury trial, for discarding refuse in waters of the state, ORS 164.775(2), based on an incident in which he bit through his in-use fishing line, allowing the line and the tackle attached to it to fall into the Columbia River. Defendant asserts that the trial court erred in denying his motion for a judgment of acquittal of that charge on the ground that the line and tackle were not "refuse" regulated by the statute. We affirm.

When reviewing the denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found that the state proved the essential elements of the crime beyond a reasonable doubt. *State v. Turley*, 202 Or App 40, 48, 120 P3d 1229 (2005), *rev den*, 340 Or 157 (2006). Defendant's conviction arose from a September 2004 incident in which he and four other people were fishing from a boat on the Columbia River. Two undercover police officers were fishing from a boat at the same location to investigate reports that illegal "foul-hook" fishing was occurring there.[1] Defendant and the people with him were using a foul-hook technique to catch fish. After the officers observed a person on defendant's boat foul-hook a fish, the officers approached the boat and identified themselves. The officers then instructed the occupants of the boat to reel in their lines for inspection. Rather than complying, defendant bit through his line and let it and the attached tackle fall into the river. The officers followed the boat to the dock and arrested defendant and another person on the boat for multiple offenses.

■ Although defendant ultimately was convicted of three offenses arising from the incident, his sole challenge on appeal pertains to his conviction for violating ORS 164.775(2). ORS 164.775 provides, in part:

"(1)   It is unlawful for any person to discard any glass, cans or other trash, rubbish, debris or litter on land within 100 yards of any of the waters of the state, as defined in

---

[1] "Foul hooking" involves hooking a fish in a body part other than the mouth.

ORS 468B.005, other than in receptacles provided for the purpose of holding such trash, rubbish, debris or litter.

"(2)   It is unlawful for any person to discard any glass, cans or other similar refuse in any waters of the state, as defined in ORS 468.700.

"* * * * *

"(5)   A citation conforming to the requirements of ORS 133.066 shall be used for all violations of subsection (1) or (2) of this section in the state.

"(6)   Violation of this section is a Class B misdemeanor."

Defendant argues that the trial court erred in denying his motion for a judgment of acquittal because his fishing line and tackle were not "similar refuse" within the meaning of subsection (2). As defendant sees it, the types of refuse to which the statute specifically refers, that is, glass and cans, are not "similar" to discarded fishing line and tackle. According to defendant, unlike fishing line and tackle, glass and cans are buoyant and sharp and, therefore, can travel long distances while posing a risk of injury to people, fish, and animals. In addition, defendant argues, glass and cans are part of a class of refuse associated with the consumption of food or drink and, thus, have few common characteristics with fishing line and tackle that have not been "rejected as useless."

■   Whether discarded fishing line and tackle constitute "similar refuse" within the meaning of ORS 164.775(2) is a question of statutory construction. We utilize the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), to ascertain the legislative intent. We begin by analyzing the text of the statute in context and, if necessary, resort to legislative history and maxims of statutory construction. *Id.* In construing the text of a statute in context, one of the relevant maxims is *"ejusdem generis,"* which indicates that, when a nonspecific phrase follows a list of items, the nonspecific phrase refers to "other items of the same kind." *Vannatta v. Keisling*, 324 Or 514, 533, 931 P2d 770 (1997). Given that the statute here uses the word "similar" in its nonspecific phrase, it is clear that we are to construe "similar refuse" in light of the prior reference to

"any glass [or] cans." "Refuse" is not defined in the pertinent statutory framework. Its ordinary meaning is "RUBBISH, TRASH, [or] GARBAGE," *Webster's Third New Int'l Dictionary* 1910 (unabridged ed 2002), and it "applies to any matter or materials rejected as useless and fit only to be thrown out or away * * *." *Id.*

The statutory context bears out that understanding of the breadth of the term "similar refuse." ORS 164.775(1) interchangeably refers to glass and cans, which are described as "refuse" in subsection (2), as "trash, rubbish, debris, or litter." Thus, in context, it is apparent that the characteristics that make refuse "similar" to glass or cans for purposes of subsection (1) are those same characteristics that make glass or cans "trash, rubbish, debris, or litter" for purposes of subsection (2). Said another way, for purposes of ORS 164.775, refuse is "similar" to glass or cans if it has the characteristics of "trash, rubbish, debris, or litter." Further to the same point, ORS 164.775(4)(b) provides that part of any sentence of imprisonment imposed on a conviction for violation of ORS 164.775(2) must include "confinement at labor clearing rubbish, trash and debris from the lands and waters described by subsections (1) and (2) * * *." Such punishment, which is not restricted to clean up of a particular genre of "similar" objects, demonstrates a broad legislative intention to punish and deter the discarding as refuse of an object in or within 100 yards of the waters of the state, regardless of any utility that the object might have in a different context.[2]

Defendant's assertion that anything of value for any purpose is excluded from the definition of "refuse" is too strict and, in context, is incompatible with the legislature's evident intent. Glass and cans are not useless for all purposes.[3] They can hold valuable contents or be empty. Moreover, even when

___

[2] Of similar proscriptive breadth is ORS 164.805(1)(a), which describes the crime of "offensive littering" as including the "[d]iscarding or depositing [of] any rubbish, trash, garbage, debris or other refuse" on the land of another under designated circumstances.

[3] We reject with little fanfare defendant's argument that glass and cans, in contrast to fishing line and tackle, are invariably sharp and buoyant. Among other problems with that proffered distinction, glass and cans are not always sharp or buoyant; they can have smooth edges and often sink to the bottom of a body of water.

empty, glass and cans are recyclable and, indeed, are often recycled for a return deposit. Yet, the statute prohibits the discarding of "any glass [or] cans" into waters of the state, regardless of whether they are full or empty, recyclable or not. Thus, refuse that is similar to glass and cans need not be useless for all purposes and fit only to be thrown away. Instead, as the term is used in the statute, an object can be "similar refuse" if it is discarded *as if it were useless*, regardless of whether it might have inherent value in a different context. Viewed in that light, the term "refuse" includes the notion of "waste," which is one of its synonyms. *Id.* Among other meanings, "waste" "may indicate [a substance] unused or rejected in one operation but possible for use in another capacity or under different circumstances." *Id.* That meaning captures the circumstances of this case. The jury could find that, despite the ordinary utility of functional fishing line and tackle, defendant discarded them as refuse when he was confronted by the police.

In short, the various subsections of ORS 164.775 and related statutes, when read together, show that the legislature intended to proscribe the discarding as refuse of objects in the waters of the state.[4] That proscription is broad enough to encompass defendant's conduct in this case. Accordingly, the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.

---

[4] Our holding should not be read to suggest that the mere placement of an object in the waters of the state is *per se* a violation of the statute. To violate the statute, a person must *discard* the object as *refuse*. Moreover, although for obvious reasons defendant does not make the argument, the adjective "similar" could be intended to modify "refuse" so as to distinguish between human-made objects such as cans or glass (or fishing tackle) that ordinarily are recycled or disposed of in a landfill and biodegradable materials that easily dissolve in water. However, we need not address that issue in this case, because defendant's conduct did not implicate any such possible distinction.